Daniel Sadeh, Esq.
**HALPER SADEH LLP**
667 Madison Avenue, 5th Floor
New York, NY 10065
Telephone: (212) 763-0060
Facsimile: (646) 776-2600
Email: sadeh@halpersadeh.com

*Counsel for Plaintiff*

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| BERNADETTE PRICE, | Case No: |
| Plaintiff, | |
| v. | JURY TRIAL DEMANDED |
| ROSETTA STONE INC., A. JOHN HASS III, LAURENCE FRANKLIN, PATRICK GROSS, AEDHMAR HYNES, GEORGE LOGUE, DAVID NIERENBERG, KATHRYN EBERLE WALKER, JESSIE WOOLLEY-WILSON, and STEVEN YANKOVICH, | |
| Defendants. | |

**COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**

Plaintiff Bernadette Price ("Plaintiff"), by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants (defined below), alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and upon information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through Plaintiff's attorneys.

**NATURE OF THE ACTION**

1.     This is an action against Rosetta Stone Inc. ("Rosetta Stone" or the "Company") and its Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(e), 14(d)(4), and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"),

15 U.S.C. §§ 78n(e), 78n(d)(4), and 78t(a), and Rule 14d-9 promulgated thereunder by the SEC, 17 C.F.R. § 240.14d-9, in connection with the proposed acquisition (the "Proposed Transaction") of Rosetta Stone by Empower Merger Sub Inc. ("Merger Sub"), a wholly owned subsidiary of Cambium Holding Corp. ("Cambium" or "Parent"), which is a portfolio company of The Veritas Capital Fund VI L.P. ("Veritas").

## JURISDICTION AND VENUE

2.     The claims asserted herein arise under and pursuant to Sections 14(e), 14(d)(4), and 20(a) of the Exchange Act (15 U.S.C. §§ 78n(e), 78n(d)(4), and 78t(a)) and Rule 14d-9 promulgated thereunder by the SEC (17 C.F.R. § 240.14d-9).

3.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331, and Section 27 of the Exchange Act, 15 U.S.C. § 78aa.

4.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)) as a substantial portion of the transactions and wrongs complained of herein had an effect in this District, the alleged misstatements entered and the subsequent damages occurred in this District, and the Company conducts business in New York.[1]

5.     In connection with the acts, conduct and other wrongs alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce,

---

[1] For example, the Company reportedly participated in various conferences in New York City in 2019. *See, e.g.*, Rosetta Stone, *Rosetta Stone Inc. Announces Participation in September Investor Conferences*, https://www.globenewswire.com/news-release/2019/08/08/1899626/0/en/Rosetta-Stone-Inc-Announces-Participation-in-September-Investor-Conferences.html (last visited Sept. 30, 2020); Rosetta Stone, *Rosetta Stone Inc. Announces Participation in the Needham Emerging Technology Conference*, https://www.globenewswire.com/news-release/2019/05/08/1819772/0/en/Rosetta-Stone-Inc-Announces-Participation-in-the-Needham-Emerging-Technology-Conference.html (last visited Sept. 30, 2020).

including but not limited to, the United States mails, interstate telephone communications and the facilities of the national securities exchange.

## PARTIES

6.      Plaintiff is, and has been at all relevant times hereto, an owner of Rosetta Stone common stock.

7.      Defendant Rosetta Stone, together with its subsidiaries, provides technology-based learning products in the United States and internationally. The Company is incorporated in Delaware. The Company's common stock trades on the New York Stock Exchange under the ticker symbol, "RST."

8.      Defendant A. John Hass III ("Hass") is Chief Executive Officer ("CEO") and Chairman of the Board of the Company.

9.      Defendant Laurence Franklin ("Franklin") is a director of the Company.

10.      Defendant Patrick Gross ("Gross") is a director of the Company.

11.      Defendant Aedhmar Hynes ("Hynes") is a director of the Company.

12.      Defendant George Logue ("Logue") is a director of the company and a co-founder of Cambium Learning Group, Inc. ("Cambium").

13.      Defendant David Nierenberg ("Nierenberg") is a director of the Company.

14.      Defendant Kathryn Eberle Walker ("Walker") is a director of the Company.

15.      Defendant Jessie Woolley-Wilson ("Woolley-Wilson") is a director of the Company.

16.      Defendant Steven Yankovich ("Yankovich") is a director of the Company.

17.      Defendants Hass, Franklin, Gross, Hynes, Logue, Nierenberg, Walker, Woolley-Wilson, and Yankovich are collectively referred to herein as the "Individual Defendants."

3

18.     Defendants Rosetta Stone and the Individual Defendants are collectively referred to herein as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

### A. Background of the Company and the Proposed Transaction

19.     Rosetta Stone was founded in 1992. It develops, markets and supports a suite of language-learning and literacy solutions consisting of web-based software subscriptions, online services, professional services, and mobile applications. The Company's offerings are sold on a direct basis and through select third party retailers and distributors.

20.     According to the Company, it has focused on the following: (1) continued growth of its K-12 business; (2) leveraging its iconic Rosetta Stone brand; (3) positioning itself as a leader in adaptive blended learning; and (4) accelerating growth and increasing intrinsic value.

21.     Rosetta Stone has organized its business into three operating segments: Literacy, E&E Language, and Consumer Language. According to the Company, (1) the Literacy segment derives revenue under a Software-as-a-Service ("SaaS") model from the sales of literacy solutions to educational institutions serving grades K-12; (2) the E&E Language segment derives language-learning revenues from sales to educational institutions, corporations, and government agencies worldwide under an SaaS model; and (3) the Consumer Language segment derives revenue from sales to individuals and retail partners worldwide and across a 100% digital subscription software business.

22.     The Company has experienced growth in certain segments as a result of the COVID-19 pandemic. More specifically, on August 6, 2020, the Company reported earnings for the second quarter ending June 30, 2020. During this period, the Company's revenue grew 7% year-over-year while Literacy bookings grew 59% and Consumer bookings grew 92%.

23.     In fact, Defendant CEO and Chairman Hass commented that the Company was increasing its 2020 full year guidance for bookings, revenue, Adjusted EBITDA and year-end cash, stating the Company was positioning itself for continued success in a post-COVID-19 world. The press release announcing the Company's second quarter 2020 financial results states, in relevant part:

> "During this unprecedented time, the Rosetta Stone team delivered outstanding second quarter results, highlighted by 41% growth year-over-year in consolidated bookings, which included a 59% increase in our Literacy segment and 92% growth in our Consumer Language segment. Our commitment to put the customer first, coupled with extremely compelling K-12 and Language product and service offerings, are clearly resonating in the marketplace," said John Hass, Chairman and Chief Executive Officer.  "As a result of our strong year-to-date performance and confidence in the second half of the year, we are increasing our 2020 full year guidance for bookings, revenue, Adjusted EBITDA and year-end cash."

> Mr. Hass continued, "While we remain concerned about the potential negative impact of the economic downturn on school, corporate and consumer budgets, we are determined to continue using this period to ensure that Rosetta Stone will be even better positioned as a leader in learning in a post-COVID-19 world—a world that we believe will align very well with our strengths as an expert provider of technology-based, adaptive blended learning solutions."

24.     Despite this promising financial outlook and growth, on August 31, 2020, Rosetta Stone issued a press release announcing that it had entered into a definitive agreement to be acquired by Cambium, a portfolio company of Veritas Capital, in an all cash transaction for $30.00 per share. The press release states, in pertinent part:

**Cambium Learning Group adds Rosetta Stone to its portfolio of digital-centric learning brands**

**Rosetta Stone has entered into a definitive agreement to be acquired by Cambium Learning Group. Rosetta Stone shareholders will receive $30 per share in cash.**

August 31, 2020 08:00 ET | **Source:** Rosetta Stone

Arlington, VA, Aug. 31, 2020 (GLOBE NEWSWIRE) -- Rosetta Stone Inc. (NYSE:**RST**) ("Rosetta Stone" or the "Company"), a world leader in technology-

based learning solutions, today announced that, following a comprehensive process, it has entered into a definitive agreement to be acquired by Cambium Learning Group ("Cambium"), a leading provider of digital education solutions and a portfolio company of Veritas Capital ("Veritas"). Cambium will acquire Rosetta Stone in an all cash transaction for $30 per share, representing an equity value of approximately $792 million, and a premium of approximately 87.5% to Rosetta Stone's unaffected closing price on July 16, 2020, the last trading day before a media report was published speculating about a potential sale process.

The Board of Directors of Rosetta Stone unanimously approved the transaction with one director not participating due to a potential interest in the transaction. The companies anticipate completing the transaction in the fourth quarter of 2020, subject to the satisfaction of customary closing conditions.

Founded in 1992, Rosetta Stone's language division uses innovative digital solutions to help all types of learners read, write, and speak more than 30 languages. Under its iconic brand, Rosetta Stone provides technology-based language solutions to individual customers, schools and businesses globally. Lexia Learning, Rosetta Stone's literacy education division, was founded more than 35 years ago and is a leader in the literacy education space. Today, Lexia helps students build reading and oral language skills through its rigorously researched, independently evaluated, and widely respected instruction and assessment blended-learning programs. Solutions include Lexia® Core5® Reading (online differentiated literacy instruction for students of all abilities in grades pre-K-5), Lexia® PowerUp® Literacy (online solution to help struggling readers in grades 6-12 become proficient readers and confident learners), Rosetta Stone® English (online blended solution to build oral language skills in emergent bilinguals), and Lexia® Rapid™ Assessment (research-based, computer-adaptive reading and language assessment).

\*       \*       \*

Goldman Sachs & Co. LLC acted as exclusive financial advisor to Rosetta Stone's Board of Directors, and Hogan Lovells US LLP served as the company's legal advisor. Schulte Roth & Zabel LLP acted as Cambium's legal advisor in connection with the transaction.

### About Rosetta Stone Inc.

Rosetta Stone Inc. (NYSE: RST) is dedicated to changing people's lives through the power of language and literacy education. The company's innovative digital solutions drive positive learning outcomes for the inspired learner at home or in schools and workplaces around the world.

Founded in 1992, Rosetta Stone's language division uses advanced digital technology to help all types of learners read, write and speak more than 30

languages, including several endangered languages. Lexia Learning, Rosetta Stone's literacy education division, was founded more than 35 years ago and is a leader in the literacy education space. Today, Lexia helps students build fundamental reading skills through its rigorously researched, independently evaluated, and widely respected instruction and assessment programs.

For more information, visit www.rosettastone.com. "Rosetta Stone" is a registered trademark or trademark of Rosetta Stone Ltd. in the United States and other countries.

**About Cambium Learning Group**

Cambium Learning® Group believes every student has great potential, teachers are mission-critical, and data, instruction and practice work together to drive performance. With a portfolio of award-winning brands, Cambium Learning Group's digital and blended curriculum, professional learning, and assessment solutions drive proficiency, equity, and other learning outcomes in classrooms everywhere. Brands include Learning A-Z® (online differentiated instruction for elementary school reading, writing and science), ExploreLearning® (online interactive math and science simulations, a math fact fluency solution, and a K-2 science solution), Voyager Sopris Learning® (blended solutions that accelerate struggling learners to achieve in literacy and math and professional learning for teachers), Cambium Assessment (innovative state- and district-level assessment solutions), and VKidz® Learning (online PreK-12 homeschool curriculum and programs for literacy and math). Come learn with us at www.cambiumlearning.com.

**About Veritas Capital**

Veritas is a leading private investment firm that invests in companies that provide critical products and services, primarily technology and technology-enabled solutions, to government and commercial customers worldwide, including those operating in the healthcare, aerospace & defense, software, national security, communications, energy, government services and education industries. Veritas seeks to create value by strategically transforming the companies in which it invests through organic and inorganic means. For more information on Veritas, visit www.veritascapital.com.

25.     On September 15, 2020, the Company filed a Schedule 14D-9 Solicitation/Recommendation Statement under Section 14(d)(4) of the Exchange Act (the "Solicitation Statement") with the SEC in connection with the Proposed Transaction.

**B.  The Solicitation Statement Contains Materially False and Misleading Statements and Omissions**

26.     The Solicitation Statement, which recommends that Rosetta Stone shareholders tender their shares to Merger Sub in connection with the Proposed Transaction, omits and/or misrepresents material information concerning: (i) the sales process leading up to the Proposed Transaction; (ii) the Company's financial projections; and (iii) the financial analyses performed by the Company's financial advisor, Goldman Sachs & Co. LLC ("Goldman"), in connection with its fairness opinion.

27.     The omission of the material information (referenced below) renders the following sections of the Solicitation Statement false and misleading, among others: (i) Background of the Offer; (ii) Recommendation of the Board; (iii) Reasons for the Recommendation of the Board; (iv) Opinion of the Company's Financial Advisor; and (v) Certain Company Forecasts.

28.     The tender offer in connection with the Proposed Transaction is set to expire at one minute after 11:59 p.m., New York City time, on October 13, 2020 (the "Expiration Date"). It is imperative that the material information that was omitted from the Solicitation Statement be disclosed to the Company's shareholders prior to the Expiration Date to enable them to make an informed decision as to whether to tender their shares. Plaintiff may seek to enjoin Defendants from closing the tender offer or the Proposed Transaction unless and until the material misstatements and omissions (referenced below) are remedied. In the event the Proposed Transaction is consummated, Plaintiff may seek to recover damages resulting from Defendants' misconduct.

**1.  Material Omissions Concerning the Sales Process Leading up to the Proposed Transaction**

29.     The Solicitation Statement omits material information concerning the sales process leading up to the Proposed Transaction.

30.     The Solicitation provides that, during the sales process leading up to the Proposed Transaction, the Company entered into numerous "confidentiality agreements" with potential buyers who, in 2019 and 2020, were interested in acquiring: (i) the entire Company (a "Whole Company Transaction"); (ii) the Company's Language business (a "Language Business Transaction"); (iii) the Company's Literacy and K-12 Language businesses (a "K-12 Business Transaction"); and/or (iv) the Company's Consumer and E&E businesses.

31.     The Solicitation Statement, however, fails to disclose the terms of all confidentiality agreements, including whether such agreements contained standstill provisions with "don't ask, don't waive" (DADW) provisions (including their time of enforcement) that would preclude interested parties from making superior offers for the Company.

32.     Without this information, Rosetta Stone shareholders may have the mistaken belief that potential buyers are or were permitted to submit superior proposals for the Company, when in fact they are or were contractually prohibited from doing so. This information is material because a reasonable Rosetta Stone shareholder would want to know, prior to tendering their shares in connection with the Proposed Transaction, whether other potential buyers are or were foreclosed from submitting a superior proposal.

33.     The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to the Company's shareholders.

**2.  Material Omissions Concerning the Company's Financial Projections**

34.     The Solicitation Statement omits material information concerning the Company's financial projections.

35.     The Solicitation Statement states that the Company provided various projections to the Board and Goldman Sachs, and that representatives of Goldman Sachs distributed these projections (other than the January 2020 Projections) to potential purchasers. These projections

included: (i) the "January 2020 Projections"; (ii) the "February 2020 Update," which purportedly reflected lower Literacy bookings; (iii) the "June 2020 Update," which purportedly reflected second quarter trends and results and a revised 2020 outlook for increased bookings expectations in the Company's Literacy and Language businesses; (iv) the "July 2020 Update," which purportedly reflected unaudited second quarter fiscal year 2020 results, including stronger than expected growth in consolidated bookings for the Company's solutions and improved operational performance in the Literacy and Language businesses; (v) the "August 2020 Update," which purportedly reflected the unaudited results through July 2020, as well as a revised outlook for the rest of 2020 and the expected impact of the revised outlook for 2020 on fiscal year 2021; and (vi) the "August 2020 10-Year Projections," which purportedly contained certain updated unaudited prospective financial information regarding the Company's operations for fiscal years 2020 through 2029" (collectively, the "Forecasts").

36.     With respect to the Forecasts, the Solicitation Statement fails to disclose: (1) all line items underlying (i) Total Bookings, (ii) Revenue, (iii) Adjusted EBITDA, (iv) Bookings-Based Adjusted EBITDA, and (v) unlevered free cash flow; (2) a breakdown of the aforementioned by business segment, to the extent provided to the Board and/or interested parties; (3) the Company's net income projections; and (4) a reconciliation of all non-GAAP to GAAP metrics.[2]

37.     The disclosure of this information is material because it would provide the Company's shareholders with a basis to project the future financial performance of the Company and would allow shareholders to better understand the financial analyses performed by the Company's financial advisor in support of its fairness opinion. Shareholders cannot hope to

---

[2] The Solicitation Statement purportedly provides the Company's unlevered free cash flows for fiscal years 2020 through 2029, which were based off of the August 2020 10-year Projections. *See* Solicitation Statement at 44.

replicate management's inside view of the future prospects of the Company. Without such information, which is uniquely possessed by Defendant(s) and the Company's financial advisor, the Company's shareholders are unable to determine how much weight, if any, to place on the Company's financial advisor's fairness opinion in determining whether to tender their shares in connection with the Proposed Transaction.

38.     When a company discloses non-GAAP financial metrics in a Solicitation Statement that were relied upon by its board of directors in recommending that shareholders exercise their corporate suffrage rights in a particular manner, the company must also disclose, pursuant to SEC Regulation G, all projections and information necessary to make the non-GAAP metrics not misleading, and must provide a reconciliation (by schedule or other clearly understandable method) of the differences between the non-GAAP financial metrics disclosed or released with the most comparable financial metrics calculated and presented in accordance with GAAP. 17 C.F.R. § 244.100.[3]

39.     The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to the Company's shareholders.

### 3.   Material Omissions Concerning Goldman's Analyses

40.     In connection with the Proposed Transaction, the Solicitation Statement omits material information concerning analyses performed by Goldman.

---

[3] Mary Jo White, *Keynote Address, International Corporate Governance Network Annual Conference: Focusing the Lens of Disclosure to Set the Path Forward on Board Diversity, Non-GAAP, and Sustainability* (June 27, 2016), https://www.sec.gov/news/speech/chair-white-icgn-speech.html (footnotes omitted) (last visited Sept. 30, 2020) ("And last month, the staff issued guidance addressing a number of troublesome practices which can make non-GAAP disclosures misleading: the lack of equal or greater prominence for GAAP measures; exclusion of normal, recurring cash operating expenses; individually tailored non-GAAP revenues; lack of consistency; cherry-picking; and the use of cash per share data. I strongly urge companies to carefully consider this guidance and revisit their approach to non-GAAP disclosures.").

41. The Solicitation Statement fails to disclose the following concerning Goldman's "*Illustrative Present Value of Future Share Price Analysis*": (1) the individual inputs and assumptions underlying the (i) multiples of enterprise value to next twelve months' revenue of 2.0x to 3.0x, and (ii) illustrative discount rate of 10.2%; (2) the net cash of the Company as of December 31 of each of the fiscal years 2020 to 2022; and (3) the Company's projected fully diluted weighted average shares outstanding for each of the fiscal years 2020 to 2022.

42. With respect to Goldman's "*Selected Publicly Traded Companies Analysis*," the Solicitation Statement fails to disclose the individual multiples and metrics for the companies observed by Goldman in its analyses.

43. The Solicitation Statement fails to disclose the following concerning Goldman's "*Illustrative Discounted Cash Flow Analysis*": (1) the individual inputs and assumptions underlying the (i) discount rates ranging from 10.0% to 12.0%, and (ii) perpetuity growth rates ranging from 1.75% to 2.75%; (2) all line items underlying the unlevered free cash flow of the Company for the period from June 30, 2020 to December 31, 2029; (3) the range of illustrative terminal values of the Company; (4) the net cash of the Company as of June 30, 2020; (5) the Company's net operating loss tax attributes as of June 30, 2020; and (6) the number of fully diluted shares outstanding of the Company as of August 21, 2020.

44. With respect to Goldman's "*Premia Analysis*," the Solicitation Statement fails to disclose each transaction and the premiums paid therein.

45. The Solicitation Statement fails to disclose the following concerning Goldman's "*Implied Premia and Multiples Analysis*": (1) the total number of fully diluted shares of the Company as of August 21, 2020; and (2) the Company's net cash as of June 30, 2020.

46. The valuation methods, underlying assumptions, and key inputs used by Goldman

in rendering its purported fairness opinion must be fairly disclosed to the Company's shareholders. The description of Goldman's fairness opinion and analyses, however, fails to include key inputs and assumptions underlying those analyses. Without the information described above, the Company's shareholders are unable to fully understand Goldman's fairness opinion and analyses, and are thus unable to determine how much weight, if any, to place on them in determining whether to tender their shares in connection with the Proposed Transaction. This omitted information, if disclosed, would significantly alter the total mix of information available to the Company's shareholders.

## COUNT I
### For Violations of Section 14(e) of the Exchange Act
### Against All Defendants

47.     Plaintiff repeats and re-alleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

48.     Section 14(e) of the Exchange Act states, in relevant part:

It shall be unlawful for any person to make any untrue statement of a material fact or omit to state any material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading . . . in connection with any tender offer or request or invitation for tenders[.]

49.     During the relevant period, Defendants, individually and in concert, directly or indirectly, disseminated or approved the false and misleading Solicitation Statement specified above, which failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, in violation of Section 14(e) of the Exchange Act.

50.     Each of the Individual Defendants, by virtue of their positions within the Company as officers and/or directors, were aware of materially false and/or misleading and/or omitted information but failed to disclose such information, in violation of Section 14(e) of the Exchange

Act. Defendants, by use of the mails and means and instrumentalities of interstate commerce, solicited and/or permitted the use of their names to file and disseminate the Solicitation Statement with respect to the Proposed Transaction.

51.     The false and misleading statements and omissions in the Solicitation Statement are material in that a reasonable shareholder would consider them important in deciding whether to tender their shares in connection with the Proposed Transaction.

52.     Defendants acted knowingly or with deliberate recklessness in filing or causing the filing of the materially false and misleading Solicitation Statement.

53.     By reason of the foregoing, Defendants violated Section 14(e) of the Exchange Act.

54.     Because of the false and misleading statements in the Solicitation Statement, Plaintiff is threatened with irreparable harm.

## COUNT II
**For Violations of Section 14(d)(4) of the Exchange Act and Rule 14d-9 Promulgated Thereunder**
**<u>Against All Defendants</u>**

55.     Plaintiff repeats and re-alleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

56.     Defendants caused the Solicitation Statement to be issued with the intent to solicit shareholder support for the Proposed Transaction.

57.     Section 14(d)(4) of the Exchange Act and SEC Rule 14d-9 promulgated thereunder require full and complete disclosure in connection with tender offers. Specifically, Section 14(d)(4) states, in relevant part:

> Any solicitation or recommendation to the holders of such a security to accept or reject a tender offer or request or invitation for tenders shall be made in accordance with such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors.

58.     SEC Rule 14d-9(d), adopted to implement Section 14(d)(4) of the

Exchange Act, states, in relevant part:

> Any solicitation or recommendation to holders of a class of securities referred to in section 14(d)(1) of the Act with respect to a tender offer for such securities shall include the name of the person making such solicitation or recommendation and the information required by Items 1 through 8 of Schedule 14D-9 (§ 240.14d-101) or a fair and adequate summary thereof[.]

59.     In accordance with SEC Rule 14d-9, Item 8 of Schedule 14D-9 requires that a company:

> Furnish such additional material information, if any, as may be necessary to make the required statements, in light of the circumstances under which they are made, not materially misleading.

60.     During the relevant period, Defendants, individually and in concert, directly or indirectly, disseminated or approved the false and misleading Solicitation Statement specified above, which failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, in violation of Section 14(d)(4) of the Exchange Act and SEC Rule 14d-9.

61.     Each of the Individual Defendants, by virtue of their positions within the Company as officers and/or directors, were aware of materially false and/or misleading and/or omitted information but failed to disclose such information, in violation of Section 14(d)(4) of the Exchange Act and SEC Rule 14d-9. Defendants, by use of the mails and means and instrumentalities of interstate commerce, solicited and/or permitted the use of their names to file and disseminate the Solicitation Statement with respect to the Proposed Transaction.

62.     Defendants acted knowingly or with deliberate recklessness in filing the materially false and misleading Solicitation Statement which omitted material information.

63.     The false and misleading statements and omissions in the Solicitation Statement are material in that a reasonable shareholder would consider them important in deciding whether to

tender their shares in connection with the Proposed Transaction.

**COUNT III**
**Violations of Section 20(a) of the Exchange Act**
**Against the Individual Defendants**

64. Plaintiff repeats and re-alleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

65. The Individual Defendants acted as control persons of the Company within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their senior positions as officers and/or directors of the Company and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Solicitation Statement filed with the SEC, they had the power to and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the false and misleading Solicitation Statement.

66. Each of the Individual Defendants was provided with or had unlimited access to copies of the Solicitation Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected. As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to the Solicitation Statement, and to correct promptly any public statements issued by the Company which were or had become materially false or misleading.

67. In particular, each of the Individual Defendants had direct and supervisory involvement in the operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same. The Individual Defendants were provided with or had unlimited access to copies of the Solicitation Statement and had the ability to prevent the issuance of the

statements or to cause the statements to be corrected. The Solicitation Statement at issue contains the recommendation of the Individual Defendants to tender their shares pursuant to the Proposed Transaction. Thus, the Individual Defendants were directly involved in the making of the Solicitation Statement.

68.     In addition, as the Solicitation Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Proposed Transaction. The Solicitation Statement purports to describe the various issues and information that they reviewed and considered—descriptions which had input from the Individual Defendants.

69.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

70.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Sections 14(e), 14(d)(4), and Rule 14d-9 promulgated thereunder, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Defendants' conduct, the Company's shareholders will be irreparably harmed.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A.     Preliminarily and permanently enjoining Defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and the tender offer in connection with the Proposed Transaction, unless and until Defendants disclose and disseminate the material information identified above to the Company's shareholders;

B.      In the event Defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding Plaintiff rescissory damages;

C.      Declaring that Defendants violated Sections 14(e), 14(d)(4), and 20(a) of the Exchange Act, and Rule 14d-9 promulgated thereunder;

D.      Awarding Plaintiff reasonable costs and expenses incurred in this action, including counsel fees and expenses and expert fees; and

E.      Granting such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

Dated: September 30, 2020                          Respectfully submitted,

**HALPER SADEH LLP**

By: /s/ Daniel Sadeh
Daniel Sadeh, Esq.
Zachary Halper, Esq. (to be admitted *pro hac vice*)
667 Madison Avenue, 5th Floor
New York, NY 10065
Telephone: (212) 763-0060
Facsimile: (646) 776-2600
Email: sadeh@halpersadeh.com
        zhalper@halpersadeh.com

*Counsel for Plaintiff*